IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA

WANDA ROBINSON, as Administratrix of the Estate of ARLEEN ALEXANDER, Deceased,

      Plaintiff,

vs.

HENDRICKS COUNTY HOSPITAL D/B/A BRICKYARD HEALTHCARE—WILLOW SPRINGS CARE CENTER,

      Defendant.

Civil Action No.: 1:24-cv-00162

## COMPLAINT

AND NOW, comes the Plaintiff, Wanda Robinson, as the Administratrix of the Estate of Arlene Alexander, Deceased, by and through her undersigned counsel, Jacob Runyon, Esquire; and the law firm of Smith Clinesmith, LLP, and files this Complaint for Defendant's violation of duties imposed upon it under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, *et al.*; the implementing regulations found at 42 C.F.R. §483, *et al.*; and for violations of the Constitution of the United States of America under Amendment Fourteen, enforceable under 42 U.S.C. §1983, against Defendant Hendricks County Hospital d/b/a Brickyard Healthcare—Willow Springs Care Center, doing business as Willow Springs Care Center, a skilled nursing facility.

### Nature of Action

1. This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act;

1

the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify the aforementioned statutes, and the Constitution of the United States of America.

### Jurisdiction and Venue

2.  As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C §1331.

3.  Venue lies within this judicial district, since all of the actions complained of herein occurred within the Southern District of Indiana.

### Parties

4.  Plaintiff Wanda Robinson is an adult who resides at 1840 Breman Lane, Indianapolis, IN 46229.

5.  Wanda Robinson is the daughter of Plaintiff's Decedent Arlene Alexander.

6.  Arlene Alexander died on July 17. 2022.

7.  Wanda Robinson is in the process of being appointed as the Administratrix of the Estate of Arlene Alexander.

8.  Plaintiff brings this action as the personal representative of the Estate of Arlene Alexander, on her own behalf, and on behalf of all those entitled by law to recover damages for the wrongful death of Arlene Alexander.

9.  The name and addresses of all persons legally entitled to recover damages for the wrongful death, pursuant to Indiana Code § 34-23-1-2, which these causes of action borrow from, of Arlene Alexander and their relationship to her as follows:

| Name | Address | Relationship |
|---|---|---|
| Wanda Robinson | 1840 Breman Ln.<br>Indianapolis, IN Indiana 46229 | Daughter |
| Sherry Stigler | 5222 Staughton Dr.<br>Indianapolis, IN 46226 | Daughter |

2

| | | |
|---|---|---|
| Carolyn Alexander | 2103 Noelting S. Way<br>New Palestine, IN 46163 | Daughter |
| Anthony Alexander | 7056 Seattle Slew Dr.<br>Indianapolis, IN 46234 | Son |
| Belinda Edmonds | 7056 Bridgemont Ct.<br>Indianapolis, IN 46231 | Daughter |
| Dejuane Alexander | 7056 Bridgemont Ct.<br>Indianapolis, IN 46231 | Son |
| Angela Alexander | Address Unknown | Daughter |
| Rodney Alexander | 10221 Ironway Dr.<br>Indianapolis, IN 46239 | Son |
| Jerron Alexander | 3514 N. Wallace<br>Indianapolis, IN 46218 | Son |
| Gerald Alexander | Address Unknown | Grandchild |
| Gerald Alexander | Address Unknown | Grandchild |
| Shon Alexander | Address Unknown | Grandchild |
| "Cookie" Alexander | Address Unknown | Grandchild |

10. Defendant Hendricks County Hospital d/b/a Brickyard Healthcare—Willow Springs Care Center (hereinafter "Defendant" or "Brickyard") is a governmental agency with its governmental offices located at 1000 East Main St., Danville, IN 46122.

11. Defendant Hendricks County Hospital, as a governmental agency, at all times relevant hereto, was acting under the color of state law.

12. Defendant Hendricks County Hospital owns and operates Brickyard Healthcare—Willow Springs Care Center ("Brickyard"), which is a skilled nm-sing facility located at 2002 W 86th St, Indianapolis, IN 46260.

13. Brickyard is owned and operated by Defendant Hendricks County Hospital. Defendant Hendricks County Hospital is proper party Defendant to this matter.

3

14. At all relevant times hereto, Defendant Hendricks County Hospital operated as a long- term care nursing facility.

15. At all times relevant hereto, Defendant Hendricks County Hospital operated as a "skilled nursing facility," Brickyard, as that term is defined in 42 U.S.C. §1395i-3.

16. At all times relevant hereto, Brickyard was acting under the control of Hendricks County Hospital, and by and through its duly authorized agents and/or employees who then and there acting within the course and scope of their employment.

17. Defendant Hendricks County Hospital is a county government organized and existing under the laws of the State of Indiana. At all times relevant hereto, Defendant Hendricks County Hospital, acting through Brickyard, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to Brickyard and was responsible for the appointment, training, supervision, and conduct of all Brickyard personnel. In addition, at all relevant times, Defendant Hendricks County Hospital was responsible for enforcing the rules of Brickyard facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the State of Indiana.

18. At no point has suit been brought by or on behalf of Arlene Alexander. either for her personal injuries nor for her wrongful death.

19. At all times relevant hereto, Plaintiff's Decedent was a recipient of Medicare benefits pursuant to 42 U.S.C.A. §1396, *et. seq.*

**Statement of Claims**

20. All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

21. Arlene Alexander. (herein "Ms. Alexander") was 82 years old when she was admitted to Brickyard on December 8, 2021 for long-term skilled nursing services.

22. Ms. Alexander had the following pre-existing conditions at the time of her admission: c cerebral infarction due to unspecified occlusion or stenosis of left cerebral artery, end stage renal disease, non-st elevation (NSTEMI) myocardial infarction, metabolic encephalopathy, generalized muscle weakness, weakness, difficulty in walking not elsewhere classified, unsteadiness on feet, dependence on renal dialysis, uncomplicated unspecified asthma, cyst of pancreas, unspecified hyperlipidemia, essential primary hypertension, unspecified chronic atrial fibrillation, unspecified without bleeding esophagitis, gastro-esophageal reflux disease with esophagitis without bleeding, long term current use of anticoagulants, unspecified severe protein calorie malnutrition, unspecified heart failure, personal history of healed traumatic fracture.

23. At the time Ms. Alexander was admitted to Brickyard, she was noted to be at moderate risk for developing pressure ulcers and/or skin breakdowns due to her comorbidities, incontinence, and limited mobility, which necessitated Ms. Alexander to rely on Brickyard staff for all of her activities of daily living. Her skin was noted to be intact at admission and it was noted in her chart that she had no current skin issues at the time.

24. Brickyard knew that Ms. Alexander was at risk for developing pressure ulcers and skin breakdowns, and represented to her family that it was knowledgeable, skilled, staffed, and able to care for Ms. Alexander in light of her risks. As such, Brickyard and its staff were required to implement certain pressure ulcer prevention protocols, which should have included a regular turning and repositioning schedule every two hours and as needed as well as pressure reducing/relieving devices to alleviate pressure from Ms. Alexander's person, to prevent Ms. Alexander from developing pressure ulcers. Ms. Alexander's family reasonably relied on Brickyard's representations when selecting Brickyard as a skilled nursing facility to care for her.

25. During Ms. Alexander's residency at Brickyard, Brickyard nursing staff regularly failed to turn and reposition Ms. Alexander every two hours or as needed, as required per the standard of care. Ms. Alexander's family routinely had to request that Brickyard staff turn and reposition Ms. Alexander.

26. As a result of the facility's failure to turn and reposition Ms. Alexander and as a result of their failure to implement proper pressure ulcer prevention protocols, which also would have included a low air mattress to relieve pressure, Ms. Alexander had unrelieved pressure to her feet and buttocks for an extended period of time, resulting in the formation of severe and debilitating pressure ulcers to her feet and sacrum/coccyx.

27. Moreover, Brickyard concealed Ms. Alexander's pressure ulcers from her family, who was not made aware of them until she was hospitalized.

28. After Ms. Alexander developed pressure ulcers, Brickyard nursing staff failed to provide adequate wound care resulting in her pressures worsening and becoming infected. Specifically, Ms. Alexander developed osteomyelitis and sepsis infections.

29. Ms. Alexander was transferred from Brickyard to Eskenazi Hospital on March 5, 2022. This is when her family first became aware of the pressure ulcers that Brickyard concealed.

30. Ms. Alexander remained hospitalized at Eskenazi Hospital until May 5, 2022. Afterwards, she was transferred to another skilled nursing facility and was placed under hospice care due to her worsening overall health condition.

31. On or about July 19, 2022, Ms. Alexander died. Ms. Alexander's causes of death listed on her Death Certificate are Sepsis, Osteomyelitis, Sacral Decubitus Ulcer and Foot Ulcer, and Dementia.

## COUNT I
## Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

### SURVIVAL

32. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

33. At all times relevant to this Complaint, Brickyard was acting under the color of state law and as an agent of the State of Indiana.

34. Defendant is bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. Defendant is also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

35. The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

36. Defendant, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

   a. By failing, as a custom and policy, to develop and implement written Policies and Procedures that prohibited the mistreatment, deliberate indifference and abuse of residents such as Arlene Alexander, as required by 42 C.F.R. §483.12 and 42 U.S.C. §1396r(b)(1)(A);

   b. By failing, as a custom and policy, to care for patients, including Arlene Alexander, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. §483.15 and 42 U.S.C. §1396r(b)(1)(A);

    c.    By failing, as a custom and policy, to promote the care of patients, including Arlene Alexander, in a manner and in an environment that maintained or enhanced her dignity as required by 42 C.F.R. §483.15 and 42 U.S.C. §1396r(b)(1)(A);

    d.    By failing, as a custom and policy, to develop a comprehensive Care Plan for patients, including Arlene Alexander, as required by 42 C.F.R. §483.20 and 42 U.S.C. §1396r(b)(2)(A);

    e.    By failing, as a custom and policy, to provide patients, including Arlene Alexander, the necessary care and services to allow her to attain or maintain the highest, practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(3)(A);

    f.    By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care by an interdisciplinary team after each of the resident's or patient's assessments as described within 42 U.S.C. §1396r(b)(3)(A) and as required by §1396r(b)(2)(C);

    g.    By failing, as a custom and policy, to conduct an assessment of a patient or resident, such as Arlene Alexander, as per 42 U.S.C. §1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. §1396r(b)(3)(C)(i)(ii);

    h.    By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising the resident's Plan of Care, specifically Arlene Alexander's Plan of Care, as required by 42 U.S.C. §1396r(b)(3)(D);

    i.    By failing, as a custom and policy, to ensure that patients or residents, including Arlene Alexander, were provided medically related social services to attain or maintain the highest practicable physical, mental and psychosocial well- being as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(4)(ii);

    j.    By failing, as a custom and policy, to ensure that an ongoing program, directed by a qualified professional, of

       activities designed to meet the interests and the physical, mental and psychosocial well-being of each resident or patient, including Arlene Alexander, as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(4)(A)(v);

k.     By failing, as a custom and policy, to ensure that the personnel responsible for the care of patients were properly certified and/or re-certified as being qualified to perform necessary nursing services as required by 42 U.S.C. §1396r(b)(4)(B);

l.     By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Arlene Alexander, to attain or maintain the highest practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. §483.30 and 42 U.S.C. §1396r(b)(4)(C);

m.     By failing, as a custom and policy, to maintain clinical records on all residents, including Arlene Alexander, including but not limited to the Plans of Care and resident's assessment, as required by 42 U.S.C. §1396r(b)(6)(C);

n.     By failing, as a custom and policy, to ensure that the Brickyard facility was administrated in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Arlene Alexander, to maintain or attain their highest practicable level of physical, mental and psychosocial well-being as required by 42 C.F.R. §483.75, 42 U.S.C. §1396r(d)(A) and 42 U.S.C. §1396r(d)(1)(C);

o.     By failing, as a custom and policy, to ensure that the administrator of Defendant Brickyard met the standards established under 42 U.S.C. §1396r(f)(4) as required by 42 U.S.C. §1396r(d)(1)(C);

p.     By failing, as a custom and policy, to ensure that Defendant Brickyard was complying with federal, state, local laws, and accepted professional standards which apply to professionals providing services to residents, including Arlene Alexander, and in operating such a facility as Defendant Brickyard, as required by 42 U.S.C. §1396(d)(4)(A); and,

q.     By failing, as a custom and policy to ensure that

> Defendant Brickyard's administrator and director of nursing properly monitored and supervised subordinate staff thereby failing to ensure the health and safety of residents or patients, including Arlene Alexander, in derogation of 42 C.F.R. §483.75 and 42 U.S.C. §1396(a)(1)(A).

37. As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress, and death as a result of Brickyard's poor care and treatment, which allowed her to suffer harm as described herein. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

    a. Pain, suffering, inconvenience, anxiety and nervousness of the Plaintiff's Decedent until the time of his death;

    b. Hospital, medical, and nursing expenses incurred on Plaintiff's Decedent's behalf;

    c. Other losses and damages permitted by law; and,

    d. Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Wanda Robinson, Individually and as the Administratrix of the Estate of Arlene Alexander, Deceased, demands damages of the Defendant Hendricks County Hospital in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT II

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

**WRONGFUL DEATH**

38. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

39. As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress and death as a result of the poor care and treatment he received.

40. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

    a. Money for funeral and estate expenses incurred because of the death of Arlene Alexander;

    b. Damages for the lost services, assistance, guidance, counseling, and companionship of Arlene Alexander;

    c. Financial support and all pecuniary benefits which would have been received from the Decedent;

    d. The expenses of administration; and,

    e. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Wanda Robinson, Individually and as the Administratrix of the Estate of Arlene Alexander, Deceased, demands damages of the Defendant Hendricks County Hospital in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, and attorney's fees.

### COUNT III

**Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983**

**SURVIVAL**

79. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

80. During the residency of Arlene Alexander, Defendant deliberately and/or

with deliberate indifference failed to properly care for her, causing her to suffer an injury to human dignity.

81. Specifically, Defendant allowed Arlene Alexander to remain in a state that was hazardous to his health and well-being. These violations interfere with Arlene Alexander's rights under the Fourteenth Amendment to the United States of America's Constitution.

82. During its treatment of Arlene Alexander, Defendant acted pursuant to a state right or privilege, and as such was a state actor.

83. While a patient at Defendant Brickyard, Arlene Alexander had a serious medical need, and the deliberate and deliberately indifferent acts and omissions of the staff at Defendant Brickyard indicated deliberate indifference to Ms. Alexander's medical needs.

84. Arlene Alexander was dependent upon Defendant Brickyard and its staff for a significant amount of his activities of daily living, nursing care, and treatment needs.

85. Defendant and its staff were deliberately indifferent to Arlene Alexander because they knew that Ms. Alexander faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

86. As a proximate result of Defendant's failure to act properly as above-described, Arlene Alexander suffered an injury to human dignity as previously referenced and suffered pain, distress and death as a result of the poor care and treatment given to her, allowing her to develop the injuries and suffer death as referenced herein. As such, Plaintiff has suffered, and is entitled to recover for, the following damages:

    a. Pain, suffering, inconvenience, anxiety and nervousness of the Plaintiff's Decedent until the time of his death;

    b. Hospital, medical, surgical and nursing expenses incurred on Plaintiff's Decedent's behalf;

    c. Attorney's fees and costs;

      d.      Other losses and damages permitted by law; and,

      e.      Any other damages as the Court sees fit to award.

WHEREFORE, Plaintiff Wanda Robinson, as Administrator of the Estate of Arlene Alexander, Deceased, demands compensatory and consequential damages from Defendant Hendricks County Hospital in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT IV

### Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983

87.      All preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

88.      As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously described and suffered pain, distress and death as a result of the injuries to her human dignity.

89.      As such, Plaintiff has suffered, and is entitled to recover for, the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

      a.      Money for funeral and estate expenses incurred because of the death of Arlene Alexander;

      b.      Damages for the lost services, assistance, guidance, counseling, and companionship of Arlene Alexander;

      c.      Financial support and all pecuniary benefits which would have been received from the Decedent;

      d.      The expenses of administration; and,

13

    e. Other losses and damages permitted by law.

WHEREFORE, Plaintiff Wanda Robinson, Individually and as Administrator of the Estate of Arlene Alexander, Deceased, demands compensatory and consequential damages from Defendant Hendricks County Hospital in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

            Respectfully submitted,

            */s/ Jacob N. Runyon*
            Jacob N. Runyon
            SMITH CLINESMITH, LLP
            325 N. St. Paul, 29th Floor
            Dallas, Texas 75201
            (214) 953-1900 – Telephone
            (214) 953-1901 – Facsimile
            jacob@fightingelderabuse.com
            service@smithclinesmith.com